## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE T.,[1] | : | Case No. 2:23-cv-03973 |
| | : | |
| Plaintiff, | : | District Judge Michael H. Watson |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | |
| SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

---

## REPORT AND RECOMMENDATIONS[2]

---

Plaintiff filed an application for Disability Insurance Benefits in August 2021.

Plaintiff's claim was denied initially and upon reconsideration. After a hearing at

Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not

eligible for benefits because she was not under a "disability" as defined in the Social

Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff

subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award

of benefits or, in the alternative, for further proceedings. The Commissioner asks the

Court to affirm the non-disability decision. For the reasons set forth below, the

---

[1] See S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

[2] See 28 U.S.C. § 636(b)(1). The notice at the end of this opinion informs the parties of their ability to file objections to this Report and Recommendations within the specified time period.

undersigned Magistrate Judge recommends that the Commissioner's decision be AFFIRMED.

## I.    BACKGROUND

Plaintiff asserts that she has been under a disability since June 1, 2020. At that time, she was thirty-three years old. Accordingly, Plaintiff was considered a "younger person" under the Social Security regulations. *See* 20 C.F.R. § 404.1563(c). Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the Administrative Record ("AR," Doc. No. 7) is summarized in the ALJ's decision ("Decision," Doc. No. 7-2 at PageID 34-52), Plaintiff's Statement of Errors ("SE," Doc. No. 10), the Commissioner's Memorandum in Opposition ("Mem. In Opp.," Doc. No. 12), and Plaintiff's Reply Memorandum ("Reply," Doc. No. 13). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

## II.    STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id*.

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the

ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## III.     FACTS

### A.      The ALJ's Factual Findings

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in the Social Security regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following findings of fact:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since June 1, 2020, the alleged onset date. |
| Step 2: | She has the severe impairments of bipolar disorder, post-traumatic stress disorder (PTSD), and generalized anxiety disorder. |
| Step 3: | She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |

4

Step 4:     Her residual functional capacity (RFC), or the most she can do
            despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276
            F.3d 235, 239 (6th Cir. 2002), consists of a full range of work at all
            exertional levels, subject to the following non-exertional limitations:
            "[Plaintiff] is limited to simple, routine, repetitive tasks, conducted
            in a work setting free of fast pace or strict production demands,
            which setting is static, in that it contemplates that changes would be
            explained in advance, which setting requires no more than
            occasional and superficial [defined as precluding group and tandem
            tasks, as well as tasks involving arbitration, negotiation, or bearing
            responsibility for the safety or welfare of others] interaction with co-
            workers and the public."

            She is unable to perform any of her past relevant work.

Step 5:     Considering Plaintiff's age, education, work experience, and RFC,
            there are jobs that exist in significant numbers in the national
            economy that she can perform.

(Decision, Doc. No. 7-2 at PageID 39-48.) These findings led the ALJ to conclude that

Plaintiff does not meet the definition of disability and so is not entitled to benefits. (*Id.* at

PageID 48.)

**B.     State Agency Psychological Consultants**

Cynthia Waggoner, Psy.D. reviewed the record and completed a Disability

Determination Explanation form in December 2021. (AR, Doc. No. 7-3 at PageID 98-

101.) Dr. Waggoner found moderate impairment in the "B Criteria" areas of interacting

with others and adapting or managing oneself. (*Id.* at PageID 99.) She found mild

impairment in the areas of understanding, remembering, or applying information and

concentrating, persisting, or maintaining pace. (*Id.*) In the mental RFC section of the

form, Dr. Waggoner indicated that Plaintiff was moderately limited in the abilities of

interacting appropriately with the general public, accepting instructions and responding

5

appropriately to criticism from supervisors, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.* at PageID 101.) Dr. Waggoner opined that due to Plaintiff's history of PTSD and anxiety with "noted symptoms of irritability," Plaintiff was limited to "infrequent contact w[ith] coworkers, supervisors[,] and the general public." (*Id.*)

In the area of adaptation, Dr. Waggoner indicated moderate limitation in the ability to respond appropriately to changes in the work setting. (AR, Doc. No. 7-3 at PageID 101.) She opined that, due to Plaintiff's history of PTSD and anxiety with "limited coping ability," Plaintiff was "limited to working in a static work environment where any changes are explained beforehand." (*Id.*) Dr. Waggoner opined that Plaintiff had no limitations in the areas of understanding and memory and sustained concentration and persistence. (*Id.*)

Deryck Richardson, Ph.D. reviewed the updated record at the reconsideration level in January 2022. (AR, Doc. No. 7-3 at PageID 107-10.) Dr. Richardson indicated that he affirmed Dr. Waggoner's assessment. (*Id.*)

The ALJ concluded that the state agency psychological consultants' findings were "partially persuasive." (Decision, Doc. No. 7-2 at PageID 46.) The ALJ acknowledged that the consultants reviewed and "cited liberally" to the evidence of record, and that they were "well[-]versed in the terminology and analytical framework employed in the disposition of these claims." (*Id.* at PageID 45.) The ALJ also acknowledged that Plaintiff's "chronic psychological disorders" would "impose at least periodic disruptions of focus and attention." (*Id.*) However, he found that the mental status findings in the

6

record showed that Plaintiff "has retained sufficient, residual, cognitive function to engage in competitive work," so long as she is "limited to the performance of simple, routine, repetitive tasks, conducted free of anxiety- or frustration-inducing production pressures." (*Id.*)

Regarding Plaintiff's social functioning, the ALJ acknowledged that Plaintiff reported that she experienced difficulty being around others and that she "often present[ed] with a depressed mood and affect (2F/70), which may tend to be off-putting." (Decision, Doc. No. 7-2 at PageID 45.) But the ALJ explained that other evidence showed abilities in this area, such as being "discernibly able to function in public places, including stores (3E/4), amusement parks (2F/110) and on out-of-state vacations (2F/115)," caring for and being awarded custody of her cousin's three children, babysitting "to her enjoyment," and being "reliably described in the record in pro-social fashion (2F/70, 111), (8F/37), (6F/4)." (*Id.*)

The ALJ discounted the consultants' limitation to "infrequent" interactions. (*Id.*) He explained that the term was not a vocational term of art, and that Plaintiff's activities (which included travel, shopping, babysitting, and taking in her cousin's three children) "would militate against implementation of so strict a limitation." (*Id.*) The ALJ reasoned: "Provided that [Plaintiff] would only occasionally interact with others, where the potential for escalation in the intensity of that interaction would be controlled, the evidence shows that [Plaintiff] has retained sufficient, residual, social function to engage in competitive work." (*Id.*)

Finally, the ALJ addressed Plaintiff's "described difficulties responding to stressors and changes." (Decision, Doc. No. 7-2 at PageID 45.) The ALJ cited examinations where Plaintiff exhibited good judgment with intact impulse control. (*Id.*) The ALJ explained that mental status examinations did not show significant deterioration "despite changes and stressors including the death of her father (2F/69), a housefire (2F/96), the death of two pets (2F/96, 115), taking in her cousin's children, attending court proceedings, and eventually acquiring custody of them (2F/52, 103), (6F/1), (8F/50)." (*Id.*) The ALJ also noted that Plaintiff had been able to travel "at least episodically" out of town and out of state. (*Id.* at PageID 45-46.) According to the ALJ, Plaintiff could engage in competitive work, "[p]rovided [she] is limited to the performance of simple, routine, repetitive tasks to begin with, conducted free of anxiety- or frustration-inducing production pressures, and, where she would not be asked to respond to changes imposed without advanced warning." (*Id.* at PageID 46.)

The ALJ concluded that the consultants "overstate[d] Plaintiff's residual cognitive capacity" and that they "overstate[d], to a mild degree, [Plaintiff's] residual social capacity." (Decision, Doc. No. 7-2 at PageID 46.) He noted, however, that the opinions were nevertheless "at least partially consistent with, and supported by, the overall evidence of record." (*Id.*)

### C.    The ALJ's Hypothetical and Vocational Expert Testimony

The ALJ posed the following question to the vocational expert (VE) at the May 2023 hearing:

8

> I [would] like you to consider a younger individual with at least a high
> school education, past work consists with that you [sic] described for
> [Plaintiff]. Further consider the individual is not subject to any of the
> exertional limitations but can interact with others only occasionally. Any
> interaction with coworkers or the general public should be in a superficial
> basis, meaning group or tandem tasks, no arbitration, negotiation, [or]
> responsibility for the safety or welfare of others. The individual can attend
> to and carry out simple, routine, repetitive tasks without fast-paced or strict
> production demands. The individual can adapt to a static work environment
> where changes are explained in advance.

(AR, Doc. No. 7-2 at PageID 87-88.)

The VE responded that such an individual could not perform Plaintiff's past work but could perform "unskilled work at various exertional levels." (AR, Doc. No. 7-2 at PageID 88.) By way of example, the VE stated that such an individual could perform the following medium, unskilled jobs: Hospital Cleaner, Dictionary of Occupational Titles (DOT) code 323.687-010, approximately 34,850 positions nationally; Machine Packager, DOT code 920.685-078, approximately 79,000 positions nationally; and Meat Clerk, DOT code 222.684-010, approximately 72,750 positions nationally. (*Id.* at PageID 88-89.) The ALJ cited to this testimony to support his conclusion that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy" and that she is not disabled. (Decision, Doc. No. 7-2 at PageID 47-48.)

## IV.    LAW AND ANALYSIS

Plaintiff asserts that the ALJ erred because he did not fully account for Plaintiff's "limited ability to interact with others." (SE, Doc. No. 10 at PageID 821.) Plaintiff points to the state agency psychological consultants' opinions that Plaintiff was limited to

infrequent interactions with supervisors, coworkers, and the general public. (*Id.*)
According to Plaintiff, the ALJ erred by failing to limit her to occasional interactions
with supervisors, in addition to the RFC limitation for occasional interactions with
coworkers and the general public. (*Id.*) Plaintiff argues that the ALJ further erred when he
limited her to superficial interaction with coworkers and the general public, but did not
also limit her to superficial interactions with supervisors. For the reasons discussed
below, the undersigned concludes that Plaintiff's arguments are not well-taken and the
ALJ's decision should be affirmed.

### A. Although The ALJ Erred By Failing To Include A Limitation In The RFC For Occasional Interactions With Supervisors, The Error Was Harmless.

#### 1. *Applicable law.*

ALJs are required to analyze the persuasiveness of "***all*** of the medical opinions" in
the record. 20 C.F.R. § 404.1520c (emphasis added). A "medical opinion" is a "statement
from a medical source about what [an individual] can still do despite [his] impairment(s)"
and whether the individual has one or more impairment-related limitations or restrictions.
20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an
issue reserved to the Commissioner—such as whether an individual is disabled—need
not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed his claim after March 27, 2017, the new regulations for
evaluating medical opinion evidence applied. Under these regulations, the ALJ "will not
defer or give any specific evidentiary weight, including controlling weight, to any
medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R.

§ 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

The first two factors—supportability and consistency—are the "most important." 20 C.F.R. § 404.1520c(b)(2) (emphasis added). The supportability factor recognizes that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Therefore, an ALJ's supportability analysis addresses whether a medical professional has sufficient justification for their *own* conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.); *accord Burke v. O'Malley*, No. 8:23-cv-415, 2024 U.S. Dist. LEXIS 48944, *8 (M.D. Fla. Mar. 20, 2024) ("Supportability addresses the extent to which a medical source or consultant has articulated record evidence bolstering her own opinion or finding.").

The consistency factor, by contrast, recognizes that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's consistency analysis therefore must compare the medical opinion at issue to evidence from "*other* medical and nonmedical sources." *Ford v.*

*Comm'r of Soc. Sec.*, No. 1:22-CV-00524, 2023 WL 2088157, at *17 (N.D. Ohio Jan. 31, 2023).

The distinction between the supportability and consistency factors is relatively clear when the opinion is from a treating provider. Providers commonly rely on the records in their possession—including progress notes, test results, statements from the claimant, and opinions from other medical providers—to support their medical opinions. An ALJ can readily identify a provider's records that purportedly support their opinion and use them to analyze supportability. Then, when analyzing consistency, the ALJ can readily compare the provider's opinion to opinions and evidence from ***other*** providers. Because each factor (supportability and consistency) considers different evidence, the reviewing court can easily determine whether the ALJ has addressed each factor.

It can be more challenging to distinguish between supportability and consistency when the opinion is from a state agency consultant. Because they do not have their own treatment records, consultants must review and rely upon documents in the administrative record to support their opinions. The ALJ will, however, consider documents from the same administrative record when analyzing both supportability and consistency. If the consultant's report clearly identifies the documents relied upon to support their opinions, then the ALJ can conduct a supportability analysis that is based on those documents. But if the consultant's report does not clearly identify the documents that support their opinions, then the ALJ's ability to conduct separate supportability and consistency analyses will be limited. *See Kenneth B. v. Comm'r of Soc. Sec.*, No. 3:22-cv-672, 2024

U.S. Dist. LEXIS 49191 (W.D. Ky. Mar. 19, 2024) (citing *Tyrone H. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3652, 2023 WL 2623571, *6 (S.D. Ohio Mar. 24, 2023)).

Because they are the most important factors, the ALJ is required not only to consider the supportability and consistency of all medical opinions in the record, but also to "explain *how* he or she considered them."[3] *Dayna S. v. Comm'r of Soc. Sec.*, 3:21-CV-00326, 2023 WL 2009135, at *5 (S.D. Ohio Feb. 15, 2023) (Gentry, M.J.) (citing to 20 C.F.R. § 404.1520c(b)(2) (internal punctuation omitted and emphasis added)). No "specific level of detail" is required, as "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.) (internal citations omitted). Thus, ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Id*.

Nevertheless, an ALJ is required "to show his or her work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (Silvain, M.J.) (internal citation omitted). Thus, "[t]his Court cannot uphold an ALJ's decision, even if there if there is enough evidence in the record to support the decision, where the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (cleaned up) (internal quotations and citation omitted). *See also Danyel P. v. Comm'r of Soc. Sec.*, No. 2:21-CV-02405, 2022 WL 1514170, at *6 (S.D. Ohio May 13,

---

[3] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

2022) (Preston Deavers, M.J.) (ALJ's "inexplicable and illogical consistency" warranted remand); *Kimberly S. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00310, 2022 WL 17820565, at *3 (S.D. Ohio Dec. 20, 2022) (Silvain, M.J.) (ALJs must "provide a coherent explanation of [their] reasoning . . . in order to provide sufficient rationale for a reviewing adjudicator or court"); *Hardiman v. Comm'r of Soc. Sec.*, No. 2:12-CV-00508, 2013 WL 3762266, at *5 (S.D. Ohio July 16, 2013) (Preston Deavers, M.J.) (remanding case on the ground that "the ALJ's decision is internally inconsistent and incomplete").

### 2. *The ALJ failed to fully account for the state agency psychological consultants' findings in the RFC.*

The undersigned finds that the ALJ failed to fully account for the state agency psychological consultants' findings in the RFC because he did not acknowledge or consider their opinions regarding Plaintiff's difficulty with supervisory interactions. The consultants found moderate limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, and they opined that she was limited to infrequent contact with supervisors. (AR, Doc. No. 7-3 at PageID 101, 109.) But the ALJ neither included a limitation for infrequent or occasional supervisory interactions in the RFC nor explained why he did not include one.

Accordingly, the ALJ erred in his analysis of the State agency psychological consultants' opinions. The ALJ must consider and evaluate the persuasiveness of ***all*** medical opinions and prior administrative medical findings in the record. 20 C.F.R. § 404.1520c(b)(c) (emphasis added). Further, if the RFC assessment conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not

14

adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). Here, the ALJ's RFC limitation for occasional interaction with coworkers and the general public does not encompass the consultants' opinion that Plaintiff was limited to infrequent interactions with supervisors. Nor did the ALJ explain why those opinions were not adopted in the RFC, as required by SSR 96-8p.

### 2.  *The ALJ's error is harmless.*

However, although the undersigned concludes that the ALJ erred by failing to incorporate the consultants' opinion regarding supervisory interaction into the RFC, or to explain why he did not, the undersigned further concludes that the error is harmless.

Defendant characterizes the ALJ's omission in the RFC as a "typographical error" because the questioning by the ALJ and Plaintiff's representative during the hearing indicates that the ALJ's hypothetical question to the vocational expert—which included a limitation for "occasional contact with others"—included supervisors. (Mem. In. Opp., Doc. No. 12 at PageID 834.) The undersigned agrees. Courts in the Sixth Circuit have held that a typographical or scrivener's error is harmless when the ALJ's meaning is clear in context. *Calkins v. Sec'y of Health & Hum. Servs.,* No. 85-5685, 1986 WL 17083, at *2 (6th Cir. May 7, 1986) (holding that the district court properly "examined the opinion as a whole to interpret the true meaning of the ALJ's findings" and was not required to "ignore the real finding of the ALJ and instead blindly follow the transcriber's version of the finding."); *Barnes v. Comm'r of Soc. Sec.,* No. 16-13714, 2018 WL 1474693 (E.D. Mich. Mar. 6, 2018) (finding that scrivener's errors were harmless because "the ALJ's true meaning is easily discernible for the analysis on each topic"); *Gomez v. Berryhill,*

15

No. 3:18-cv-11738, 2019 WL 5680841, at *5 (E.D. Mich. June 11, 2019) (holding that a typographical error did not require remand because context showed the ALJ's actual meaning).

In this case, the ALJ's intended meaning of the RFC is clear from his decision. The ALJ did not separately address the consultants' opinions regarding interactions with supervisors, coworkers, and the general public when he evaluated the consultants' opinions and found that they were partially persuasive. (Decision, Doc. No. 7-2 at PageID 45-46.) Instead, the ALJ more broadly addressed the consultants' opinion that Plaintiff was limited to infrequent contact with "others." (*Id.* at PageID 45.) The ALJ acknowledged Plaintiff's subjective reports of difficulties "being around ***others***," and cited objective evidence that supported some restrictions in that area. (*Id.* (emphasis added).) The ALJ then cited other evidence that showed Plaintiff's abilities in interacting with others. (*Id.*) He further explained why he discounted the term "infrequent" and instead concluded that Plaintiff could "only occasionally interact with ***others***." (*Id.* (emphasis added).)

Because the ALJ's decision did not distinguish between supervisory interactions and interactions with coworkers and the general public, the undersigned finds that the ALJ's analysis addresses all three types of interactions. Therefore, the ALJ evaluated the consultants' opinions regarding Plaintiff's ability to interact with coworkers, the general public, ***and supervisors*** when he found that the consultants' opinions were only partially persuasive. Accordingly, the ALJ's failure to include "supervisors" in the RFC limitation for occasional social interactions is a harmless typographical error.

16

The undersigned reaches the same result when applying the traditional harmless error test. Courts generally excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007) (citing *Connor v. U.S. Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). A court's ability to excuse a procedural error depends upon the nature of the regulation and the importance of its procedural safeguard. *Id*. For example, an ALJ's failure to comply with the prior treating physician rule will rarely be excused. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Such an error may only be excused as harmless if the medical opinion "is so patently deficient that the Commissioner could not possibly credit it," if the violation is irrelevant because the Commissioner "adopts the opinion . . . or makes findings consistent with [it]," or if the goal of the procedural safeguard is otherwise met. *Id*. at 547.

Applying *Wilson* here, the undersigned concludes that the ALJ did consider the supervisory limitations described by the state agency psychological consultants. Specifically, the ALJ's hypothetical question to the VE during the May 2023 hearing essentially mirrored his later RFC, except that the ALJ's question referred to an individual of Plaintiff's age, education, and work experience who "can interact ***with others*** only occasionally." (AR, Doc. No. 7-2 at PageID 87-88 (emphasis added).) The VE testified in response to the hypothetical that such an individual would be able to perform jobs in the national economy. (*Id.* at PageID 88-89.) Because the ALJ's hypothetical encompassed occasional supervisory interactions, the undersigned finds that

17

the jobs that the VE cited—which are the same jobs that the ALJ cited to support the Step

Five conclusion—do not require more than occasional interactions with supervisors.

The questioning by Plaintiff's representative at the hearing further supports this

conclusion. Plaintiff's representative posed an additional hypothetical question to the VE

at the hearing:

> And with regards to interaction with the supervisors[,] if an individual was
> limited to *less than occasionally interacti[ng] with supervisors*, would I be
> correct in assuming that that would make it difficult for such an individual
> to make it through the probationary period to learn the tasks that make up
> the job and so forth?

(AR, Doc. No. 7-2 at PageID 91 (emphasis added).) This question shows that Plaintiff's

representative, too, interpreted the limitation in the ALJ's hypothetical for "interact with

others only occasionally" to include supervisory interactions.

Accordingly, because the jobs that the ALJ cited to support the Step Five

conclusion do not require more than occasional interaction with supervisors, the omission

of that limitation in the RFC did not change the ultimate outcome of the decision. The

undersigned therefore finds that the ALJ's failure to specifically address the consultants'

opinion regarding occasional supervisory interactions in the RFC is a harmless error.

**B.    The ALJ Did Not Err By Failing To Include A Limitation In The RFC
For Superficial Interactions With Supervisors.**

Plaintiff asserts that the ALJ erred because he "limited [Plaintiff] to occasional and

superficial interaction with coworkers and the general public, and neglected to include

any limitation whatsoever with respect to [her] ability to interact with supervisors." (SSE,

Doc. No. 10 at PageID 822.) Plaintiff similarly argues that the ALJ erred by failing to

"explain why a limitation to superficial interaction only applied to coworkers and the general public." (*Id.* at PageID 823.) This assertion is not well-taken.

Significantly, the state agency psychological consultants did not opine that Plaintiff is limited to superficial interactions with supervisors, coworkers or the general public. (AR, Doc. No. 7-3 at PageID 101, 109.) The consultants found moderate limitation in Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors, and limited Plaintiff to ***infrequent*** supervisory contacts (in addition to infrequent contact with coworkers and the general public). (*Id.*) As discussed above, the ALJ explained why he did not adopt the term "infrequent" and instead limited Plaintiff to "occasional" social contacts. Because the consultants did not opine that Plaintiff is limited to superficial interactions, the ALJ was not required to adopt such a limitation or explain why he did not adopt it under 20 C.F.R. § 404.1520c(b)(c) or SSR 96-8p. This is not a situation—like the one discussed above—where the ALJ failed to account for the consultants' opinion in the RFC.

Accordingly, the undersigned can only consider whether substantial evidence supports the ALJ's decision to omit from the RFC a limitation to superficial supervisory interactions.

### 1.     *Applicable law.*

A claimant's RFC describes the most she can do in a work setting despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). The Social Security regulations, rulings, and Sixth Circuit precedent charge the ALJ with the final responsibility for determining a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1527(d)(2)

(the final responsibility for deciding the RFC "is reserved to the Commissioner."); 20

C.F.R. § 404.1546(c); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)

("[T]he ALJ is charged with the responsibility of evaluating the medical evidence and the

claimant's testimony to form an 'assessment of his [RFC]'"). When formulating the RFC,

the ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and

other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ must base the RFC on

all relevant evidence in the record, including the claimant's descriptions of her limitations

and symptoms, objective medical evidence, medical opinions, other medical evidence,

evidence from non-medical sources, and prior administrative medical findings. *See* 20

C.F.R. § 404.1545(a)(1)-(5). Notably, "[t]he determination of a plaintiff's RFC is entirely

within the purview of the ALJ, and this Court will defer to that finding even if there is

substantial evidence in the record that would have supported an opposite conclusion."

*Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-05858, 2021 WL 5881784, at *5 (S.D. Ohio

Dec. 13, 2021) (internal quotations and citation omitted) (Preston Deavers, M.J.).

### 2. The ALJ's RFC is supported by substantial evidence.

Plaintiff argues that the RFC does not fully account for her mental impairments

and that the ALJ should have included a limitation for superficial contact with

supervisors. (SE, Doc. No. 10 at PageID 822-24; Reply, Doc. No. 13 at PageID 841-42.)

The undersigned disagrees because substantial evidence supports the omission of such a

limitation in the RFC.

Significantly, Plaintiff has pointed to no evidence that supports her argument. The

record contains no medical opinion that Plaintiff is limited to superficial interactions with

supervisors. Plaintiff does not cite any testimony or medical evidence to support her assertion. (*See generally* SE, Doc. No. 10; Reply, Doc. No. 13.) Instead, Plaintiff relies on the RFC limitation of superficial interactions with coworkers and the general public, and argues that the ALJ "did not specifically point to anything in the record that would support not limiting [Plaintiff] to superficial interaction with supervisors." (Reply, Doc. No. 13 at PageID 842.)

Therefore, Plaintiff essentially challenges the ALJ's interpretation of the record. But this Court cannot weigh the evidence and decide whether the preponderance of the evidence supports a different conclusion. *Biestek*, 139 S. Ct. at 1154 (2019). Instead, this Court is limited to determining whether the ALJ's findings are supported by substantial evidence.

The Court concludes that the ALJ's findings are, in fact, supported by substantial evidence.[4] The ALJ acknowledged many of Plaintiff's subjective complaints, which included depression, anxiety, symptoms of bipolar disorder and PTSD, difficulty being around others, social isolation, limitations with concentration and completing tasks, difficulty handling stress and changes in routine, and medication side effects of drowsiness and dizziness. (Decision, Doc. No. 7-2 at PageID 40-41, 43-46.) The ALJ

---

[4] The ALJ discussed some of the evidence at Step Three, as well as in the RFC analysis. (*See* Decision, Doc. No. 7-2 at PageID 40-41, 43-46.) Sixth Circuit precedent establishes that this Court may consider the evaluation of the evidence at other steps of the decision to determine how to "credit the evidence at issue in this appeal." *See, e.g., Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x. 426, 435 (6th Cir. 2014); *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365-66 (6th Cir. 2014); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016). Accordingly, this Court will consider the ALJ's evaluation of Plaintiff's mental impairments earlier in Step Three and in the RFC analysis when evaluating Plaintiff's assignment of error.

summarized the medical records that documented Plaintiff's treatment for her mental impairments. (*Id.*) He acknowledged many of the abnormal findings in the treatment notes which generally included a depressed or anxious mood and affect, as well as poor performance on a serial-seven subtraction task during the consultative psychological evaluation. (*Id.*)

The ALJ compared these findings to other normal findings that included adequate receptive language skills, an appropriate fund of knowledge, average to above-average intellectual functioning, normal speech, good hygiene and grooming, linear and logical thought processes, coherent and goal-directed thoughts, good insight and judgment, no suicidal or homicidal ideation, no auditory or visual hallucinations, intact impulse control, full orientation, and intact or good memory, attention, and concentration. (Decision, Doc., No. 7-2 at PageID 40-41, 43-46.) He noted that Plaintiff performed a serial-three subtraction task during the consultative evaluation "in average fashion." (*Id.* at PageID 41.) Further, the ALJ explained that although Plaintiff described adverse medication side effects in a disability report, Plaintiff's providers "consistently describe[d] her as tolerating her mediations well" and reported that her medications were "helpful in attenuating her symptoms." (*Id.* at PageID 43 (citing AR, Doc. Nos. 7-6 at PageID 239; 7-7 at PageID 441, 471, 478, 505, 519, 574, 603, 762).)

In terms of Plaintiff's social abilities and limitations, the ALJ emphasized that Plaintiff's providers often described her presentation in "'pro-social' terms: as cooperative (2F/70, 46), or as calm and cooperative (2F/97, 111), (8F/37), or as calm and cooperative with good eye contact (8F/15), (10F/3-4), or as polite, cooperative, engaged,

with adequate social skills (6F/4)." (*Id.* at PageID 41 (citing AR, Doc. No. 7-7 at PageID

455, 479, 506, 520, 552, 574, 596, 762-63).) The ALJ also cited a disability report where

Plaintiff denied "specific difficulties getting along with community 'others', those in

authority, or having ever lost a job due to interpersonal conflicts." (*Id.* at PageID 41

(citing AR, Doc. No. 7-6 at PageID 236-37).)

     The ALJ concluded that the balance of the objective evidence did not support

Plaintiff's allegations of disabling symptoms. (Decision, Doc. No. 7-2 at PageID 42-44.)

The ALJ nevertheless accounted for this evidence by limiting Plaintiff to the range of

simple, routine tasks as identified in the RFC and that involve no more than occasional

and superficial[5] interaction with coworkers and the public. (*Id.* at PageID 42.) As noted

above, the ALJ also committed a harmless typographical error by failing to include a

limitation for occasional supervisory contact in the RFC. The undersigned concludes that

the ALJ's findings regarding Plaintiff's social functioning, and resulting RFC, are

supported by substantial evidence.

     Plaintiff cites to a Sixth Circuit case and argues: "The ALJ's complete and utter

silence on this matter makes it impossible to trace the ALJ's reasoning." (Reply, Doc.

No. 13 at PageID 842 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th

Cir. 2011).) However, *Stacey* is distinguishable. The *Stacey* court explained that an ALJ's

decision "must say enough 'to allow the appellate court to trace the path of his

---

[5] The ALJ defined superficial interaction as "precluding group and tandem tasks, as well as tasks involving arbitration, negotiation, or bearing responsibility for the safety or welfare of others." (Decision, Doc. No. 7-2 at PageID 42.)

reasoning,'" and found that the ALJ erred by failing to discuss the weight assigned to the disabling opinion of an examining physician. 451 F. App'x at 519-20 (citing *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)). By contrast, the ALJ did not fail to discuss a medical opinion, because no medical source opined that Plaintiff is limited to superficial supervisory interactions. The state agency psychological consultants opined that Plaintiff was limited to ***occasional*** interactions with supervisors—they did not opine that she can only have ***superficial*** interactions with supervisors. (AR, Doc. No. 7-3 at PageID 98-101, 107-10 (emphasis added).) Therefore, the ALJ was not required to include such a limitation in the RFC, or to explain why he did not include it.

In sum, the undersigned finds that the ALJ's conclusions are supported by substantial evidence, and that the ALJ did not err by failing to include a limitation for superficial supervisory interactions in the RFC. The ALJ's decision should therefore be affirmed.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Statement of Errors (Doc. No. 10) be OVERRULED;

2. The Court AFFIRM the Commissioner's non-disability determination; and

3. The case be terminated on the Court's docket.

*s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge

24

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days if this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).